THOMAS, Chief Judge,
dissenting:
I respectfully dissent. The key issue in this case is whether Actmedia Inc. v. Stroh, 830 F.2d 957 (9th Cir. 1986), is compatible with subsequent Supreme Court authority addressing commercial speech, culminating with Sorrell v. IMS Health, Inc., 564 U.S. 552, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011). Sorrell held that content-based restrictions on truthful, non-misleading commercial speech advertising legal goods and services require “heightened judicial scrutiny,” rather than traditional intermediate scrutiny under Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Sorrell, 564 U.S. at 565-66, 131 *852 S.Ct. 2653. Of course, the ultimate determination as to whether Sorrell altered the Central Hudson test is entirely up to the Supreme Court. However, I think the most reasonable reading of Sorrell is that it did.[1] Therefore, I would hold that Actme-dia is irreconcilable with Sorrell, expressly overrule Actmedia, and remand to allow the district court to conduct a purposive inquiry into the restricting statute, as required by Sorrell.
In previous decisions, the Supreme Court considered post-hoc rationalizations proffered by the government when assessing challenged restrictions. See, e.g., Edenfield v. Fane, 507 U.S. 761, 768, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (“Neither will we turn away if it appears that the stated interests are not the actual interests served by the restriction.”). Sorrell departs from this practice and requires a purposive inquiry into the restricting statute.[2]
Sorrell not only employed the phrase “heightened scrutiny” repeatedly in the opinion but also significantly added “drawn to achieve” language to the fourth prong of Central Hudson,[3] as noted by Justice Breyer’s interpretation of the majority opinion. See, e.g., Sorrell, 564 U.S. at 588, 131 S.Ct. 2653 (Breyer, J., dissenting) (“Nor has this Court ever previously applied any form of ‘heightened’ scrutiny in any even roughly similar case.... The Court (suggesting a standard yet stricter than Central Hudson) says that we must give content-based restrictions that burden speech ‘heightened’ scrutiny.”) (both emphases in original). A contrary interpretation would effectively write out the “drawn to achieve” language, which Sorrell added to the Central Hudson test, and render the use of “heightened scrutiny” in the opinion entirely superfluous. Further, Sor-rell’s two-step test would make no sense if intermediate scrutiny applies equally to content- and speaker-based regulations and non-content- and non-speaker-based regulations.
I therefore suggest that, under Sorrell, the purposive inquiry should be applied within the framework of the four-factor Central Hudson test, heightening the scrutiny historically applied at Central Hud *853 son’s fourth factor. Accordingly, in my view, with respect to the fourth factor, the government must establish that the challenged statute “directly advances a substantial governmental interest and that the measure is drawn to achieve that interest,'’ Sorrell, 564 U.S. at 572, 131 S.Ct. 2653 (emphasis added). Therefore, a court must determine whether the government’s asserted substantial interests for the restriction are a pretext for the government’s desire “to suppress a disfavored message.” Id. If so, the law is invalid.
The inquiry that I suggest does not test virtue — rather, it tests congruence. Thus, the first step is to discern the government’s purpose for regulating, and the second step is to determine whether there is “a fit between the legislature’s ends and the means chosen to accomplish those ends.” Sorrell, 564 U.S. at 572, 131 S.Ct. 2653 (citing Bd. of Tr. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)). A pretextual regulation could conceivably survive Central Hudson analysis (if it suppresses no more speech than necessary to vindicate an asserted substantial government interest), but fail Sorrell review (if the regulation’s underlying purpose was not to vindicate that substantial interest but rather to suppress a message disfavored by the government). In addition, in my view, a purposive inquiry means that the government cannot rely on post-hoc rationalizations to justify the statute.
Because the district court did not analyze the statute under the heightened scrutiny required by Sorrell, I would reverse and remand. Therefore, I respectfully dissent.

. I express no opinion as to the merits of the changes I believe Sorrell made to existing law; rather, my disagreement is with the conclusion that Sorrell did not alter existing law at all.

. Commentators invoke purposive inquiries as evidence of escalating commercial speech protections. See, e.g., Note, Whither Central Hudson? Commercial Speech in the Wake of Sorrell v. IMS Health, 47 Colum. J.L. & Soc. Probs. 171, 183 (2013); Nat Stern & Mark J. Stern, Advancing an Adaptive Standard of Strict Scrutiny for Content-Based Commercial Speech Regulations, 47 U. Rich. L. Rev. 1171, 1176 (2013) (citing Rubin v. Coors Brewing Co., 514 U.S. 476, 488, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995) ("If combating strength wars were the goal, we would assume that Congress would regulate disclosure of alcohol content for the strongest beverages as well as for the weakest ones.”)); see also Thompson v. W. States Med. Ctr., 535 U.S. 357, 373, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002) ("Nowhere in the legislative history of the [Food and Drug Administration Modernization Act] or petitioners' briefs is there any explanation of why the Government believed forbidding advertising was a necessary as opposed to merely convenient means of achieving its interests.”). Indeed, without first discerning the government’s purpose for regulating, it would seem difficult to judge whether "the process by which the [state] adopted the [restriction] ... demonstrate^] a careful calculation of the speech interests involved.” Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 562, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001).

.The majority characterizes the addition of this language as "unremarkable,” but the fact that the Supreme Court has previously used various terms to describe the fourth factor does not mean that we should ignore its most recent formulation of the test.